UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Kimberlin Gibson, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 1:14-cv-448-SEB-DML |
| ) | |
| Creditors Service of Indiana, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S CONSOLIDATED BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT IF HER MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Kimberlin Gibson, by and through her attorney John T. Steinkamp, files this Consolidated Brief in Response to Defendant's Motion for Summary Judgment and in Support of Her Motion for Summary Judgment.

## I. INTRODUCTION

On May 4, 2015, Defendant filed its Motion for Summary Judgment in the above-captioned action. This response refutes the arguments contained in Defendant's briefs. This memorandum will not follow Defendant's brief; instead, Plaintiff will begin by refuting Defendant's argument under section 1692e, then 1692f, and finally 1692d.

## II. ARGUMENT

On page 10 of its brief for summary judgment, Defendant deceptively fails to correctly identify the status of the law as it relates to misrepresentations under the Fair Debt Collection Practices Act (hereinafter "FDCPA"). Defendant argues that a "statement will only be deemed

1

confusing or misleading if 'a significant fraction of the population would be similarly misled'". *Docket #29, p. 10*. However, this Court in <u>Karr v. Med-1 Solutions</u>, 2014 WL 1870928 (S.D.Ind. 2014) applied the law correctly and noted that the Seventh Circuit Court of Appeals in <u>Lox v. CDA, Ltd.</u>, 689 F.3d 818, 822 (7th Cir. 2004) recognizes three (3) categories of FDCPA cases that allege deceptive or misleading statements. The Judge in <u>Karr</u> stated that:

> "The first category includes cases in which the allegedly offensive language is plainly and clearly not misleading. In those cases, extrinsic evidence is not necessary to show that the reasonable unsophisticated consumer would not be confused by the language. The second category of cases involves language that is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer. In these cases, plaintiffs prevail only be producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers are misled or deceived by the language. <u>Id</u>.; *see also*, <u>Ruth v. Triumph Partnerships</u>, 577 F.3d 790, 800 (7th Cir. 2009). Cases involving language that is clearly misleading or deceptive on its face fall into the third category. In these cases, courts may 'grant summary judgment for the plaintiffs without requiring them to prove what is already clear.' <u>Ruth</u>, 577 F.3d at 801."

<u>Karr</u>, at *4.

Defendant deceptively fails to inform this Court of the other two (2) categories discussed in <u>Karr</u>, *supra*, in its brief. In the case at hand, Defendant's dunning letter falls into the third category discussed *supra*. That is, Defendant's letter is clearly misleading or deceptive on its face. Indeed, the language of the letter is clearly misleading and deceptive because it fails to identify the creditor to whom the debt is owed. "It seems to us clear that failing to name the creditor entirely-**like falsely identifying the creditor**-is liable to lead to the kind of patent confusion forbidden by the [FDCPA]" <u>Moran v. Greene & Cooper Attorneys, LLP</u>, 43 F.Supp.3d 907, at 913 (S.D.Ind. 2014) (emphasis added). In <u>Moran</u>, like in this case, the offending letter

2

was a subsequent communication. Additionally, while the consumer in <u>Moran</u> had a cause number to refer to, which the Court still found lacking, in this case Ms. Gibson had no identifying information upon which to rely. There was no account number for her to refer. Defendant's position that Plaintiff go on a scavenger hunt to determine how much she owes and to whom borders on the absurd. Additionally, Defendant's dunning letter deceptively states that the consumer owes "multiple creditors" when, in fact, the consumer owes only one creditor. *See Document #31, page 12*.

Next, Defendant speculates as to congressional intent without citing to the congressional record or any document that pertains to the passage of the FDCPA. On pages 10-12 of its brief, Defendant deceptively discusses the interplay of various sections of the FDCPA and, ultimately, speculates (because Defendant's brief never cites anything from the congressional record) at congressional intent regarding the FDCPA. Defendant attempts to conjure congressional intent from the language of the FDCPA and warns that the courts should not expand the requirements of 1692g (despite the fact that Plaintiff is not arguing that 1692g should be expanded).

The reality is that the U.S. Congress intended for courts to proscribe improper conduct that is not specifically enumerated in the FDCPA. The Senate Report regarding the passage of the FDCPA specifically states:

> "This legislation expressly prohibits a host of harassing, deceptive and unfair practices . . . In addition to these specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. *This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed*."

S. Rep. 95-382, (1977)(emphasis added).

Thus, the U.S. Congress specifically intended to empower courts to proscribe other improper conduct which may not be found specifically enumerated in the FDCPA. Furthermore, the key language at the beginning of the section of the statute says "without limiting the general application of the foregoing. . . ". 15 U.S.C. § 1692e.

Nothing in the FDCPA indicates that it was the intent of congress to limit the application of the statute. To the contrary, the plain language of the statute itself indicates that it was the intent of congress for courts, where appropriate, to proscribe conduct that violates the FDCPA.

Here, it is appropriate for this Court to find that Defendant's conduct violated the FDCPA. Indeed, Defendant deceptively used the phrase "multiple creditors" when, in fact, Defendant was only attempting to collect for one creditor. Additionally, Defendant failed to identify the creditor so the unsophisticated consumer would not have any idea who was owed.

Defendant argues on pages 10-12 of its brief that, after the initial communication, Defendant only has to comply with 1692e(11) which requires a debt collector to state that the letter is from a debt collector. Thus, using Defendant's logic, Defendant could send a letter that "complies" with the FDCPA that does not identify the name of the creditor, does not state the amount due, and otherwise fails to provide any other financial information for the consumer to make an informed financial decision as long as the debt collector states that the letter is from a debt collector. Such a scenario was not the intent of the U.S. Congress when it enacted the FDCPA. Such a scenario would lead to an absurd result.

In the past, this Court has ruled that statutes should not be read to lead to absurd results. Specifically, this Court has stated:

> "The rules of statutory construction require courts to give the
> words of a statute their plain and ordinary meaning unless the

> statute otherwise provides definitions, or unless the construction is plainly repugnant to the intent of the legislature. However, if a statute is susceptible to more than one interpretation, it is ambiguous. If a statute is ambiguous, then courts must give effect, and implement the intent of the legislature. In doing so, courts must examine the whole statute and not give too much meaning to any particular word or words in isolation, but should extract the purpose of the legislation and avoid an unjust or absurd result."

American Land Holdings of Indiana, LLC v. Jobe, 655 F.Supp.2d 882 (S.D.Ind. 2009) *citing* Leone v. Commissioner, Indiana Bureau of Motor Vehicles, 906 N.E.2d 172, 180-81 (Ind.App. 2009).

The Absurdity Doctrine is a rule of statutory construction which states that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available". Hassan v. Colorado, 870 F.Supp.2d 1192 (D.Colo. 2012) *citing* Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). Further, if the text leads to absurd conclusions or is ambiguous, the Court may look to legislative history to determine Congress's intended meaning. Yoon v. VanCleef, 498 B.R. 864 (N.D.Ind. 2013) *citing* Pullman-Standard, a Div. of Pullman, Inc. v. Interstate Commerce Comm'n, 705 F.2d 875, 879 (7th Cir. 1983).

The clear intention of the U.S. Congress was to have the "[FDCPA] protect consumers from a host of unfair, harassing, and deceptive debt collection practices . . ." *See* Senate Report No. 95-382. The legislation expressly prohibits a host of harassing, deceptive, and unfair debt collection practices. Id. In addition to these specific prohibitions, [the FDCPA] prohibits in general terms any harassing, unfair, or deceptive collection practice. Id. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed. Id.

Moreover, Courts have ruled that the FDCPA is designed to be a remedial statute that protects consumers.  *See* S. Rep. 95-382, at *1; Heathman v. Portfolio Recovery Associates, 2013 WL 3746111, at *2 (S.D. Cal. 2013); Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2001) ("Because the FDCPA...is a remedial statute, it should be construed liberally in favor of the consumer"); McDaniel v. South & Associates, P.C., 325 F.Supp.2d 1210, 1215 (D. Kan. 2004); Tourgeman v. Collins Financial Services, Inc., 755 F.3d 1109, 1118 (9th Cir. 2014).  It promotes methods of collecting debts other than through deception and misrepresentation.  *See* 15 U.S.C. § 1692(c).

On page 11 of Defendant's brief, Defendant attempts to argue that the "totality of letters" should protect it and Defendant deceptively attempts to analogize this case to Beeson v. Med-1 Solutions, LLC, 2008 WL 4443224 (S.D. Ind. 2008) vacated in part 2008 WL 4545333 (S.D.Ind. 2008).  In Beeson, the debt collector had sent letters to the consumer over the course of a few months in which the debt collector identified the original creditor in each letter and then filed a lawsuit in which the Plaintiff was the debt collector and not the original creditor.  Also, the paperwork attached to the lawsuit documentation identified the original creditor.  Thus, each and every document sent over the course of a few months by the debt collector in Beeson identified the original creditor.  However, in this case, Defendant sent letters to Plaintiff over the course of several years, not months, like the debt collector in Beeson, *supra*.  Indeed, according to Defendant in the case at hand, the first dunning letter was sent in 2009, several years prior to the commencement of this lawsuit.  Additionally, Defendant's letters changed over the years.  Ultimately, Defendant's letter only stated that Plaintiff owed "multiple creditors" and failed to identify the actual creditor or creditors.  Further, by stating "multiple creditors" in its letter, it

explicitly states that Ms. Gibson owed more than one creditor which is contrary to the letters sent to Ms. Gibson previously. In its brief, Defendant states that "Gibson received no communications from Creditors regarding debts owned by any entity other than Radiology Associates". *Docket #29, page 13*. However, this statement is not true--as pointed out above--Gibson ultimately received a letter from Defendant that indicated that she owed "multiple creditors". In short, Defendant's reliance on Beeson is misplaced because it is not similar to this case at all.

On pages 14-15, Defendant attempts to refute Plaintiff's reliance on Smith v. Am.Revenue Corp., 2005 WL 1162906. Plaintiff used the Smith case because it is directly on point and it is from Indiana. The Defendant in Smith sent a dunning letter that failed to identify the creditor to whom the debt was owed and only stated that the consumer owed "various accounts" (similar to this case in which Defendant sent a letter that stated "multiple creditors"). The Court in Smith noted that:

> "Similarly, the September 18 letter sent to Ms. Smith hides the character of the debt and is unclear as to what debts are being collected. Like the debtor in Fields, in order for Ms. Smith to determine which debts were actually being collected by the September 18 letter, she would have to search her records for any prior collection letters from American Revenue, or other bills sent directly from the creditors, and add them up to reach a total of $1,299.63. The fact that the September 18 letter is not the initial dunning letter as it was in Fields is immaterial because Ms. Smith would still need to rely on past notices, bills, or letters in order to understand the character of the debt being collected. As in Fields, someone else trying to pay Ms. Smith's debts would have the same confusion in trying to determine which debts were being collected by the September 18 letter. Moreover, if Smith did not actually receive or had misplaced one or more initial collection letters from American Revenue, she would be unable to determine which combination of prior collection letters together equaled $1,299.63. In addition, the unclear nature of the "various accounts" in the

7

> September 18 letter is not irrelevant, as in Fields, because even if Ms. Smith had saved all her bills, she still would be required to speculate as to which bills added together equal $1,299.63."

Smith, at *6. In the case at hand, Plaintiff would have to go through years of sporadic letters from Defendant to attempt to determine who she owed. However, she could not because the dunning letter at issue in this case states that she owed "multiple creditors" and she had never received such a letter from Defendant previously. Ultimately, regarding the reference to "various accounts" in the letter at issue in the Smith case, the Court found the debt collector's letter "patently confusing on its face in that, after a thorough and careful reading, this Court is unable to determine either the identity of the creditors or the amount owed to the specific creditors." Id., at *5. Likewise, the Court in this case should find Defendant's letter patently confusing on its face and, accordingly, Defendant's actions should be determined to violate the FDCPA. Indeed, in order to find a clear picture as to whom Defendant was collecting for, Plaintiff had to consult with legal counsel, file a federal lawsuit, and engage in the discovery process. Only then was she truly given the chance to figure out how much she owed and to whom. Even so, Plaintiff was till unable to determine "what comprises the charges in the balance due on the October 12, 2013, letter." *Deposition of Kimberlin Gibson, pg 19, lines 1-2*. Additionally, Defendant was not clear as to which of the eleven accounts assigned to it appeared in the October letter. Indeed, Defendant's representative, Mr. Van Dyke, was questioned about each individual account during his deposition. *See Van Dyke Depo,* pg 32, line 7, through pg 35, line 21. Mr. Van Dyke testified that the accounts owed by the Plaintiff had the following amounts: $42.75; $45.75; $477.25; $85.50; $42.75; $492.75; $450.00; $208.00; $626.00; $500.00; and $37.50. Id. The Defendant's representative stated, **under oath**, that all of these amounts were included in the dunning letter

8

sent to Plaintiff. *See Van Dyke Depo*, pg 18, lines 12-24. However, when the amount due for all eleven accounts is added together, the total amount due is $3,008.25, not the $2,965.50 which was the amount demanded in Defendant's dunning letter. Thus, according to Defendant's representative, the amount due on the letter was not correct. Indeed, Defendant's name and address is the only accurate piece of material information that is correct on the letter in question. If Defendant is permitted to engage in such deceptive conduct to collect debts from the unsophisticated consumer, the result would be completely absurd, and fly in the face of the FDCPA. For this reason, in addition to those discuss *supra* and *infra*, Plaintiff should be awarded summary judgment against Defendant.

Interestingly, Defendant never contrasts the Smith case directly. Instead, Defendant focuses on Fields v. Wilber Law Firm, PC, 383 F.3d 562 (7th Cir. 2004). Presumably, the facts in the case at hand and the facts in the Smith case are so similar that Defendant simply cannot find a factual or legal wedge to use to differentiate the cases. Thus, this Court should use the Smith case as a guide and find that Defendant has violated the FDCPA by sending a dunning letter that fails to identify the creditor to whom the debt is owed.

Regardless, on page 15 of its brief, Defendant states that the Fields case does not require a debt collector to include all information in any subsequent communication that a "forgetful debtor" may overlook, as the Smith opinion implies. *Docket #29, page 15*. Contrary to this assertion, the Fields opinion specifically states that "an unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely." The Fields case is not the only court to state that unsophisticated consumers lose track of their debts. *See*, e.g., Moran v. Greene & Cooper Attorneys, LLP, 43 F.Supp.3d 907, 914 (S.D.Ind. 2014)("Unsophisticated consumers

9

may lose track of their debts..."). Thus, in this case, because unsophisticated consumer lost track of their debts--especially debts that are several years old--debt collectors should be required to identify the name of the creditor to whom the debt is owed, or at the very least refrain from misleading the unsophisticated consumer into thinking she owes more entities than she does in reality. This is particularly deceptive because Defendant does not even provide Plaintiff with an account number with which to consult. There is just an amount demanded, along with a patently false and deceptive statement that Defendant is collecting on behalf of "Multiple Creditors". It is absurd that Defendant expects an unsophisticated consumer to be able to locate prior letters and piece together what is owed to whom when Defendant withholds the most important pieces: The identity and number of creditors owed.

In its footnote on pages 13-14, Defendant deceptively argues that Gibson has failed to provide any evidence that the alleged misrepresentation at issue was material and Defendant asserts that the only method by which Gibson could support such a claim is through survey evidence. *Docket #29*, pages 13-14, fn. 4. The Court in Smith, *supra*, refutes Defendant's assertion that survey evidence is needed because, after reviewing the dunning letter which only identified the creditor by using the phrase "various accounts", the Court found that "the letter patently confusing on its face". Smith, at *5. Regarding the materiality issue, what factor is more material and important than knowing who does the consumer owe? The identity of the creditor is crucial to the consumer and the consumer's ability to allocate his/her resources.

**Reply to Defendant's Response**

In Defendant's Consolidated Brief, *see Docket #33*, it continues to argue that the standard for non-initial letters is lower. Defendant cites again to the requirements of § 1692g. However,

Defendant misses one key point. The Seventh Circuit Court of Appeals has stated unequivocally, "[d]ebt collectors may not make false claims, period." Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004). Debt collectors are under a continuing obligation to refrain from making misrepresentations as to the character, amount, legal status of the debt, in addition to refraining from making misrepresentations generally its attempts to collect a debt. See §§ 1692e(2)(A) and 1692e(10), respectively. Defendant, in its letter, not only misrepresented the number of creditors involved, but did not include every account that was assigned to it, despite its continued assertions. The simple fact is that Defendant, in its attempt to collect a debt, left Plaintiff, along with any unsophisticated consumer, guessing as to whom the alleged debts were owed, and indeed which debts Defendant was attempting to collect. Defendant also misunderstands Plaintiff's assertions regarding the information to be included in subsequent letters. Plaintiff does not argue that the original creditor be included in subsequent letters, merely that Defendant state who Plaintiff currently owes.

Defendant, in its Consolidated Brief, also continues to argue that misrepresenting the creditor to whom debts are owed is immaterial. Materiality turns on whether the statement, or in this case misstatement, would affect a person's decision-making. *See* Black's Law Dictionary (10th ed. 2014). If the unsophisticated consumer cannot discern whom she owes, and indeed is led to believe that she now owes multiple creditors, when, in fact, she only owes one creditor, her decision-making is going to be greatly affected. Also, not knowing how many accounts are included would be very detrimental to the unsophisticated consumer's ability to make an informed decision, mainly because she does not have accurate information.

Indeed, courts across the country have found the identity of the creditor to be material, nay essential, to a consumer's ability to make informed and reasonable decisions. "[I]t is important to know the proper identity of the creditor. Knowing a creditor's identity allows the "least sophisticated consumer" to make more informed decisions on how to communicate with the creditor and **avoid being misled**." Heathman v. Portfolio Recovery Associates, LLC, 2013 WL 3746111 at 3* (S.D.Calif. 2013)(emphasis added) *citing* Isham v. Gurstel, Staloch & Chargo, P.A., 738 F.Supp.2d 986, 996 (D.Ariz. 2010). Other courts have stated that "[b]y ensuring that consumers are fully and **truthfully** apprised of the facts and of their rights, the FDCPA enables them 'to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process.'" Tourgeman v. Collins Financial Services, Inc., 755 F.3d 1109, 1122 (9th Cir. 2014)(emphasis added) *citing* Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1176 (9th Cir. 2006) *quoting* Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002).

Defendant, in its Consolidated Brief, *Docket #33*, changes its tune from its initial summary judgment brief. Indeed, Defendant changes its position from the beginning of this case. Defendant's own representatives stated, under oath, that all eleven accounts were included in the October letter. Indeed, Mr. Van Dyke, Defendant's representative, testified that Plaintiff had eleven accounts with a single creditor. *Van Dyke Depo*, page 17, lines 3-12. Mr. Van Dyke also testified that if all eleven accounts were added together, the total is $2,965.50. Id., pg 18, lines 19-24. However, if the amounts for the accounts are added together, the sum is in fact $3,008.25, not $2,965.50. *Van Dyke Depo*, page 32, line 7, through pg 35, line 21. Defendant even stated in its summary judgment brief that "[t]he 'balance due' on the October Letter represents the debtor's total indebtedness; the figure was calculated by simply adding up the

amounts of all outstanding accounts owed by Gibson......[Exhibit A, Van Dyke Dep., p. 29, lns 15-19; Exhibit B, Reynolds Dep., p. 32, lns 3-8]" *Docket #29, page 5*. However, as stated in Plaintiff's brief in support of her summary judgment motion, in addition to being stated, *supra*, not all of the accounts were included in the letter, contrary to Defendant's prior multiple assertions. *See Docket #31, page 13*. Defendant changes its position by stating in its Consolidated Brief that one of the account was more than six years old at the time of the October letter, and thus that Defendant cannot send a letter to collect it. This ironically consumer-friendly argument flies in the face of current precedent, as indeed in the very case cited by Defendant, Elliott v. Cavalry Investments, LLC, 2015 WL 133745, at *6, the Court states, "time-barred debts still exist, even if they are unenforceable under state law". Id., at *6. Thus, while Defendant could not sue to collect the one account that it had previously stated was included in the letter, it was not considered extinguished.

## Plaintiff is entitled to Judgment under 1692d

It is clear Defendant intentionally sent the letter at issue. Indeed, the "companionated letter" is the letter specifically sent where a consumer has multiple accounts with Defendant. *Reynolds Depo*, pg 8, lines 4-7. Indeed, all "companionated letters" come out with "multiple creditors". *Van Dyke Depo*, pg 39, lines 3-8. Additionally, no one verifies the amount due prior to sending out a letter. *Van Dyke Depo*, pg 37, lines 10-16. Defendant, in its brief, argues that conduct that is "objectively inconvenient" is not actionable under this section. Defendant's letter, however, is objectively false, and as admitted by Defendant on several occasions was intentionally sent to Plaintiff containing false and indeed incomplete information. The consequence of said behavior can be seen to be abusive, as Black's Law Dictionary defines abuse

as "A departure from legal or reasonable use; misuse" Black's Law Dictionary (10th ed. 2014). Here, Defendant is departing the reasonable use of a collection letter by sending it with objectively false and incomplete information. Indeed, as discussed, *supra*, Defendant's own representatives were unable to correctly determine the number of accounts included in the letter. Indeed, in Defendant's brief, it continues to assert that eleven accounts were included in the letter, but when all the amounts are added up the total allegedly due is $3,008.25, not the $2,965.50 that the letter demanded. Defendant departed from reasonable use of the dunning letter by including objectively false information regarding the number of creditors. It also departed from reasonable, and therefore abused Plaintiff, by only including some of the accounts that had been assigned to it, without any way for Plaintiff to identify which accounts were being collected.

The Defendant argues that because this conduct is not one of the enumerated violations of § 1692d, then it cannot violate said section. This flies in the face of the plain language of the statute and Congress' intent in passing the FDCPA. As discussed, *supra*, the Senate Report regarding the passage of the FDCPA specifically states: "[I]n addition to these specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. *This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed*." S. Rep. 95-382, (1977)(emphasis added).

Thus, the U.S. Congress specifically intended to empower courts to proscribe other improper conduct which may not be found specifically enumerated in the FDCPA. Furthermore, the key language at the beginning of this section of the statute says "[w]ithout limiting the general application of the foregoing. . . ". 15 U.S.C. § 1692d. By demanding that an

unsophisticated consumer pay an amount, to an unidentified creditor, Defendant is engaging in conduct the natural consequence is to abuse any person. Indeed, by misleading Plaintiff, along with any unsophisticated consumer, as to the number of creditors whom it is collecting, Defendant's conduct will naturally abuse any person, by leading her into thinking that she owes more entities than she does in reality.

### Plaintiff is entitled to judgment under 1692f

> "It is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt...one simple way to comply with.....§ 1692f in this regard would be to itemize the various charges that comprise to total amount of the debt."

Fields, at 566. Here, Defendant sent Plaintiff a dunning letter purporting to collect for "Multiple Creditors". It is unfair for Defendant to include such objectively false information, indeed an out and out lie. It is also unfair for Defendant to continually state that it was attempting to collect eleven accounts from Plaintiff in its dunning letter when indeed it was only collecting for some. The numbers simply do not add up. $42.75 + $45.75 + $477.25 + $84.50 + $42.75 + 492.75 + $450.00 + $208.00 + $626.00 + $500.00 + $37.50 = $3,008.25. Defendant has continually stated that all eleven of the above-mentioned amounts were included in the letter. However, the amount clearly stated in the letter is $2,965.50. Thus, Defendant's letter does **NOT** included all eleven accounts, and indeed Defendant leaves it up to Plaintiff to determine which account is not included while providing her no information. Defendant requires Plaintiff do this when Defendant itself is unable. That is unfair. This conduct, while not specifically enumerated in the FDCPA, falls under the Court's ability to find a violation, as discussed, supra, the beginning of § 1692f reads, "Without limiting the general application of the foregoing..." Thus, the FDCPA

provides the Court with authority to find Defendant's conduct a violation of § 1692f, and the facts provide the Court with a basis to find such violation. It is patently unfair to request that an unsophisticated consumer sift through prior bills, some of which may have been lost, and patch together whom she owes. It is unfair for Defendant to deliberately hide the information from Plaintiff, such as the identity of the creditors upon whose behalf it is collecting. It is unfair for Defendant to demand that Plaintiff figure out how Defendant arrived at the amount in the letter, when there is no account number for Plaintiff to relate to. Defendant, by intentionally withholding information from Plaintiff, engaged in unfair an unconscionable conduct in an attempt to collect a debt, and thus violated § 1692f.

## Conclusion

Defendant's violations of the above-stated statutes are supported by the facts as demonstrated above and in Plaintiff's Motion for Summary Judgment. Accordingly, Plaintiff requests that her Motion for Summary Judgment be granted.

Respectfully submitted,

/s/ John T. Steinkamp
John T. Steinkamp
John Steinkamp and Associates
Attorney for Plaintiff
5218 S. East Street, Suite E1
Indianapolis, IN 46227
Office: (317) 780-8300
Fax: (317) 217-1320
Email: steinkamplaw@yahoo.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on June 23, 2015, the foregoing pleading was electronically filed. Service of the filing will be made on the following ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this document via the court's electronic filing system.

Peter Velde, pvelde@k-glaw.com
Nick Levi, nlevi@k-glaw.com

                                        /s/ John T. Steinkamp
                                        John T. Steinkamp
                                        John Steinkamp and Associates
                                        Attorney for Plaintiff
                                        5218 S. East Street, Suite E1
                                        Indianapolis, IN 46227
                                        Office: (317) 780-8300
                                        Fax: (317) 217-1320
                                        Email: steinkamplaw@yahoo.com